IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| LINDA PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 2:09-CV-287 |
| | ) | |
| ZALE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil action is before the court for consideration of "Defendant's Motion for Summary Judgment" [doc. 13]. Plaintiff has filed a response [doc. 25], and defendant has submitted a reply [doc. 29]. Oral argument is unnecessary, and the motion is ripe for the court's determination.

Plaintiff has filed suit pursuant to the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101 *et seq.*, for alleged discrimination, hostile work environment, and retaliation based upon her age. For the reasons that follow, the motion will be granted, and this case will be dismissed.

*Background*

Defendant[1] operates retail jewelry stores nationally.  Plaintiff is a female in her fifties who worked for defendant as a sales associate for 14 years.  At the time of her termination, she was working in a store located in Johnson City, Tennessee, and the manager of that store was Terry "Steve" Ferguson.

 Plaintiff states that Ferguson hired young female associates to work in the store, some of whom he dated and saw socially outside of work.  She says that the younger associates were permitted to stay in the back area and off the sales floor during work hours to do homework, visit with friends, and sleep , leaving her to wait on customers.[2]  According to plaintiff, she made more than one complaint to defendant's Human Resources ("HR") office.

In the fall of 2008, plaintiff engaged in a merchandise return that ultimately led to her dismissal.  She wanted to return a necklace that had been a gift from a boyfriend, whom she later learned was married.  The return should have been put on a store gift card, but at the time the store was out of gift cards.  With Ferguson's approval, plaintiff processed

---

[1] Defendant points out in its summary judgment memorandum that the complaint incorrectly identifies the defendant as "Zale Corporation."  The correct name is "Zale Delaware, Inc."

[2] In the complaint plaintiff states that she "let the younger associates take credit for some of her jewelry sales so each associate could make her individual sales quota and not be subjected to disciplinary action or discharge."  However, in response to defendant's summary judgment, plaintiff claimed that her manager directed her to assign her sales to younger associates so he would not have to write them up or discipline them for not meeting sales quotas.

the return by putting the amount of the necklace on her personal debit card and signing the name of the original purchaser on the return receipt.[3]

According to his affidavit, in December 2008, Bryan Peek, Human Resources Representative for Zale Delaware, Inc., received a copy of an anonymous complaint from defendant's Legal Ethics Hotline alleging that plaintiff had returned jewelry on her debit card and that the customer's name was used. Peek sent the complaint to loss prevention for investigation. After the investigation he received a copy of plaintiff's statement admitting to making the return as described. After consulting with the director of human resources, who concurred with his recommendation to terminate plaintiff, the decision was made to terminate plaintiff's employment.

Plaintiff says that Keith Howlett, the loss prevention investigator, accused her of returning a necklace she had had for years and of forging the purchaser's signature. She also says that he made her rewrite her statement to admit to something. Additionally, plaintiff states that Howlett showed favoritism to young sales associates involved in loss prevention matters so they would not disciplined. These matters occurred in other of defendant's stores, not the Johnson City store where plaintiff worked.

Additionally, plaintiff states that although Ferguson said he would tell Howlett that he had approved the return, she found out from the area manager Steve Haralson that he

---

[3] In the complaint and her deposition testimony, there is no reference to plaintiff's ex-boyfriend being on the phone during the transaction. However, in response to the summary judgment motion, plaintiff says that he was on the phone and OK'd the procedure because he did not want the return to appear on his credit card for his wife to see.

3

had not told them about his approval. Haralson was involved in the investigation with Howlett.

II.

*Standard of Review*

Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment.[4] Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to

---

[4] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010. The Advisory Committee Notes to the 2010 amendments reflect that the standard for granting summary judgment "remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying [that standard]." Fed. R. Civ. P. 56 advisory committee's note.

4

present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

III.

*Analysis*

**Hearsay Objections**

In its reply in support of its motion for summary judgment, defendant identified multiple paragraphs in plaintiff's affidavit and in the affidavit of Denice Osborne that according to defendant contain "inadmissible hearsay testimony, descriptions of events of which [the affiant] has no personal knowledge, and opinions of layperson." Plaintiff initially made no effort to respond to defendant's specific arguments, which under the circumstances would have been appropriate and permitted by the court.

5

Anticipating a hearsay problem with the affidavits, plaintiff included in a footnote her response to the motion for summary judgment, which states the following:

> The plaintiff insists that the statements of Meaghan Roberts and Tona Miller regarding their actions and Manager Ferguson's comments are admissible as evidence of the young ladies' then existing mental or emotional conditions, motives, or intent under FRE # (sic) 803(3) and FRE # (sic) 404(b) and as the statements of co-conspirators with Manager Ferguson under FRE # (sic) 801(d)(2)(E).

It is apparent to the court, however, the most if not all of the statements are needed by the plaintiff for the truth of the matter asserted. Therefore, the court by order [doc. 30] gave plaintiff the opportunity to respond to the hearsay objections, which she timely did [doc. 32]. Defendant timely submitted its response [doc. 33]. The court will address the substance of the hearsay objections to the extent necessary to rule on the issues presently before the court.

## Age Discrimination

Plaintiff's claim for age discrimination is brought pursuant to the THRA, "a 'comprehensive anti-discrimination law,' which is 'intended to further the policies embodied in the similar federal laws against employment discrimination.'" *Johnson v. Collins & Aikman Auto. Interiors, Inc.*, No. 1:02-CV-365, 2004 WL 1854171, at *3 (E.D. Tenn. Feb. 26, 2004). The statute provides in relevant part that it is a discriminatory practice for an employer to "[f]ail or refuse to hire or discharge any person or otherwise to discriminate

6

against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin." Tenn. Code Ann. § 4-21-401(a)(1). The Age Discrimination in Employment Act ("ADEA") "prohibits employers from discriminating 'against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 620 (6th Cir. 2006) (citing 29 U.S.C. § 623(a)).

The stated purpose of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964 . . . and the Age Discrimination in Employment Act of 1967 . . . ." Tenn. Code Ann. § 4-21-101(a)(1). Thus, courts "apply the same analysis to age-discrimination claims brought under the THRA as those brought under the ADEA." *Bender*, 455 F.3d at 620; *see also Dennis v. White Way Cleaners, L.P.*, 119 S.W.3d 688, 693 (Tenn. Ct. App. 2003) ("Because of the commonality of purpose between the Tennessee Human Rights Act and the federal statutes, we may look to federal law for guidance in enforcing our own anti-discrimination laws." (internal quotation marks and citations omitted)). Therefore, under both the THRA and the ADEA, plaintiff "must prove by a preponderance of the evidence . . . that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 129 S. Ct. 2343, 2351 (2009); *see also Harris v. Metro. Gov't of Nashville & Davidson Cnty*, 594 F.3d 476, 485 (6th Cir. 2010).

7

In order to establish a prima facie case of age discrimination, a plaintiff must demonstrate that "(1) he is a member of the protected class, that is, he is at least forty years of age; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently from similarly situated employees outside the protected class."[5] *Briggs v. Potter*, 463 F.3d 507, 514 (6th Cir. 2006) (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004)). Once plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* (citing *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547 (6th Cir. 2004)). If the defendant makes the necessary showing, the burden shifts back to the plaintiff "to show that the employer's proffered reason was mere pretext for intentional age discrimination." *Harris*, 594 F.3d at 485 (citations omitted). "The plaintiff retains the ultimate burden of proving that age was the "but-for" cause of the employer's adverse action." *Id.* (citing *Gross*, 129 S. Ct. at 2351).

Plaintiff can clearly establish the first three factors of the prima facie case. The problem for plaintiff arises in establishing the fourth prong of the prima facie showing, demonstrating that she was treated differently than similarly situated employees outside the protected class. The situation presented by plaintiff is basically that she was the oldest person in the store and the manager liked the younger associates better than her, so he treated

---

[5] Plaintiff's response only references use of the "treated differently" method of establishing the fourth prong of the prima facie case. She offers no argument or cogent showing that she was replaced by a younger person. *See Grubb v. YSK Corp.*, 401 F. App'x 104, 113 (6th Cir. 2010).

8

them better. The following exchange occurred in her deposition:

> Q.    . . . "Mr. Ferguson told us you've alleged age discrimination"?
>
> A.    No.
>
> Q.    Okay.
>
> A.    No.
>
> Q.    Okay.
>
> A.    I'm not aware of that.
>
> Q.    Okay.
>
> A.    But what I'm saying, you know, he would never hire anybody in that would actually work. He allowed them to do things that - - off the floor and he favored them. I mean, he would hire them in to date them. He'd hire them in to do everything. He let them work on their laptop. He let them do all kinds of different things, be late and still pay them for it.
>
> Q.    And, you've obviously alleged that that was because of the difference in your age. Is it possible because he liked them better?
>
> A.    Well, he liked dating them.
>
> Q.    I mean, I - - I'm trying to understand why you are relating it directly to age. Is that because you were the oldest one in the store?
>
> A.    Yes.

Plaintiff was terminated for violation of company policy because she improperly returned merchandise she did not originally purchase. She put the purchase price of the merchandise on her debit card and signed the original customer's name to the return receipt. However, the different treatment about which she complains centers around the favoritism shown to the younger sales associates "at the Zale's Johnson City store who were outside of the protected category (in their twenties and thirties)." These sales associates, however, did not engage in conduct similar to that engaged in by plaintiff. Plaintiff contends

9

that the other associates did not work on the retail floor, they slept, did homework, or socialized with friends in the back room, and went drinking with Ferguson after hours. This conduct, though, is not the conduct that plaintiff engaged in that resulted in her termination. "[I]n determining whether the plaintiff was treated less favorably than other 'similarly-situated' employees, courts should look to whether the allegedly comparable employees have 'engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Jones v. St. Jude Med. S.C., Inc.*, No. 2:08-CV-1047, 2011 WL 4543837, at *21 (S.D. Ohio Sept. 29, 2011) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Plaintiff must show that the proposed comparators are similar in all relevant aspects and engaged in acts of comparable seriousness to the acts in which she engaged. *Bobo v. United Parcel Serv., Inc.*, 665 F.3d 741, 751 (6th Cir. 2012). The conduct at issue must be similar in type and severity. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002).

The associates in the Johnson City store to which plaintiff compares herself did not engage in returning a piece of jewelry against company policy for which they were not disciplined. Nor was plaintiff disciplined for the type of conduct engaged in by the younger associates, because she herself did not engage in such conduct. The plaintiff's conduct and the comparators' conduct were not the same, and therefore plaintiff cannot establish that she was treated differently than similarly situated employees outside the protected class. Thus,

her age discrimination prima facie case fails.[6]

Nevertheless, even assuming *arguendo* that plaintiff could establish a prima facie case, in the court's opinion, plaintiff cannot demonstrate pretext. The defendant has met its burden of stating a legitimate non-discriminatory reason for its adverse employment decision. Plaintiff was terminated for violation of company policy by improperly returning merchandise she did not purchase.

Once defendant has stated a legitimate, non-discriminatory reason for its adverse action, plaintiff must show that defendant's proffered reason is a pretext for discrimination. In her response, plaintiff makes no effort to address specifically pretext. "[P]laintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167

---

[6] In the context of her "me too" evidence argument, plaintiff states, without any developmental argument or discussion, that the female associates in the Bristol, Kingsport, and Johnson City stores under Howlett's investigative jurisdiction are all comparators for demonstrating disparate treatment. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed [argumentation], are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Cole*, 359 F.3d 420, 428 n.13 (6th Cir. 2004) (citation omitted). In any event, plaintiff has not argued the specifics regarding these incidents to document the details for comparison. The other female associates were located in different stores under different managers and engaged in different conduct than plaintiff, who admitted to making an improper credit card merchandise return.

Also, the court understands that the personnel records of defendant's employees produced to plaintiff were to be viewed by plaintiff's counsel only, unless plaintiff's counsel first obtained permission of the court. However, that directive was in the context of discovery disclosure, not in for purposes of responding to summary judgment. Rather than requesting that the records be provided under seal or redacted, plaintiff's counsel testified to the content of the records in a declaration, thus acting as a witness and also presenting hearsay evidence.

11

(2009); *see also Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 804 (6th Cir. 1994) (plaintiff must do more than impugn employer's asserted justification; "plaintiff must also adduce evidence of the employer's discriminatory animus").

> With regard to pretext, the Sixth Circuit has stated:
>
> > To raise a genuine issue of material fact on the validity of an employer's explanation for an adverse job action, the plaintiff must show, again by a preponderance of the evidence, either (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate the action; or (3) that they were insufficient to motivate the action.

*Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996)(citations omitted); *see also Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009) (the court asks "whether the plaintiff has produced evidence that casts doubt on the employer's explanation, and, if so how strong it is."). "To prove pretext, the plaintiff must introduce admissible evidence to show 'that the proffered reason was not the true reason for the employment decision' and that racial animus was the true motivation driving the employer's determination." *Barnes v. United Parcel Serv.*, 366 F. Supp. 2d 612, 616 (W.D. Tenn. 2005) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993)). Plaintiff "must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendants intentionally discriminated against him." *Braithwaite v. Timken*, 258 F.3d 488, 493 (6th Cir. 2001) (internal quotation marks and citations omitted). At all times, the ultimate burden of persuasion remains with the plaintiff. *Burdine*, 450 U.S. at 253.

12

Pretext cannot be shown herein on the grounds that the proffered reason has no basis in fact since plaintiff admits to the conduct which resulted in her termination. She even states that she should have been put on probation rather than terminated for her conduct. Plaintiff also cannot successfully show pretext by attempting to demonstrate that the proffered reason was insufficient to motivate termination. Peek's affidavit makes clear that no employee has engaged in similar conduct and kept his or her position, and plaintiff has offered no proof to question the validity of that proof.

Without specifically arguing that the evidence is an attempt to show pretext, plaintiff makes an effort to demonstrate discriminatory animus by contending that this case involves the "cat's paw" theory of imputed animus, presumably to show that the proffered reason did not actually motivate the decision to terminate plaintiff. The court does not agree. Plaintiff's theory is that the alleged age animus of Ferguson, Howlett, and Roberts can be imputed to the decision maker Peek and that these employees were somehow "defacto" decision makers.

Roberts was a store associate with no decision making capacity of any kind, and none will be imputed to her, defacto or otherwise. In addition, the information plaintiff relies on from Roberts comes in the form of hearsay and is not admissible on summary judgment. "[H]earsay evidence may not be considered on a motion for summary judgment." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). In paragraph 34 of plaintiff's deposition, plaintiff relates a conversation she had with a sales associate named Tona Miller who told

13

plaintiff that Roberts had called the corporate hot-line accusing plaintiff of fraud after

Ferguson told Miller and Roberts during an evening out that plaintiff had complained about

them. Plaintiff contends that the statement is not hearsay but a party opponent admission.

A statement is not hearsay if "offered against an opposing party and . . . was made by the

party's agent or employee on a matter within the scope of that relationship and while it

existed." Fed. R. Evid. 801(d)(2)(D). Relating information obtained during an evening out

partying was not within the scope of Miller's employment nor within Miller's authority as

an employee. The statement is rank hearsay and inadmissible.

The other information from Roberts that is excluded from consideration is in

paragraph 11 of the Denise Osborne affidavit. Osborne relates that Roberts came by her

store shortly after plaintiff's termination and told Osborne that she had finally gotten the

plaintiff fired. The arguments offered by plaintiff that this statement is admissible have no

merit. Roberts's statement is clearly hearsay and not admissible on summary judgment.

*Hartsel*, 87 F.3d at 799.

As to Howlett and Ferguson in connection with the cat's paw theory, plaintiff

has the problem of not being able to establish a causal nexus between them and the ultimate

decision maker and his decision to terminate plaintiff. In *Romans v. Michigan Department*

*of Human Services*, 668 F.3d 826, 836 (6th Cir. 2012), the Sixth Circuit stated:

> We have recognized that plaintiff may show discrimination by
> offering evidence of a "'causal nexus' between the ultimate
> decisionmaker's decision to terminate the plaintiff and the

supervisor's discriminatory animus." *Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666, 677 (6th Cir. 2008). Plaintiff must show that "[b]y relying on this discriminatory information flow, the ultimate decisionmakers acted as the conduit of [the supervisor's] prejudice – his cat's paw." *Id*. at 678 (internal quotations omitted). Plaintiff cannot make this showing.

The dilemma for plaintiff herein is that she cannot demonstrate that Peek was connected to a "discriminatory information flow" let alone that he relied on such a flow of information in making his termination decision. "[A] plaintiff must submit competent evidence that one employee's 'discriminatory motives somehow influenced' the decisionmaker." *Noble v. Brinker Int'l Inc*., 391 F.3d 715, 723 (6th Cir. 2004) (citation omitted). "Unless the statements or conduct of nondecisionmakers can be imputed to the ultimate decisionmaker, such statements or conduct [can not] suffice to satisfy the plaintiff's burden . . . of demonstrating animus." *Id*. at 724 (citing *Bush v. Dictaphone Corp*., 161 F.3d 363, 369 (6th Cir. 1998) (internal quotation marks omitted)).

Even assuming *arguendo* that Howlett and/or Ferguson displayed a bias toward plaintiff based on her age, plaintiff has not presented any evidence that either Howlett's or Ferguson's alleged opinions and attitudes influenced Peek's ultimate decision to terminate her. After receiving the anonymous complaint and forwarding it to loss prevention, Peek received plaintiff's statement. In her statement, while disavowing any intent to defraud the company, plaintiff readily admits that she made the merchandise return by putting the amount

15

on her debit card and signing the customer's name.[7]  She also admits that she should have waited and placed the purchase amount on a gift card.  In the undated letter plaintiff contends she sent to Peek after her termination, she continues to try and explain why the purchase price for the necklace was not put on her ex-boyfriend's credit card and also that she should have been put on probation rather than terminated.  Throughout, plaintiff has never denied that she made the merchandise return as reported to Peek.

Peek makes clear in his affidavit that he consulted with defendant's Human Resources Director Vern Martin with his recommendation to terminate plaintiff.  Peek also makes clear that prior to making the decision he did not consult with the store manager where plaintiff worked and "relied solely on the information provided by Plaintiff in her signed statement."  Peek's affidavit closes with the statement, "I am not aware of any situation in which a Zale Delaware, Inc. employee has engaged in conduct similar to Plaintiff and known to Zale Delaware, Inc. and has not been terminated."

Plaintiff has presented no proof to put in question Peek's lack of contact with Ferguson.  Without competent evidence that Ferguson influenced Peek's decision to terminate plaintiff, there is no causal nexus, no discriminatory information flow, and no animus can be imputed to Peek through Ferguson.  *See Noble*, 391 F.3d at 723.  "'[M]ere knowledge' of another's ill-perceptions of a plaintiff, and the plaintiff's 'mere speculation;

---

[7] Neither the complaint nor plaintiff's deposition reference that the ex-boyfriend was on the phone when the return was being processed.  In response to summary judgment, plaintiff contends that he was on the phone with her during the return transaction.

that the ill-perceptions must have been transmitted to the decisionmaker in a way that contaminated the decisionmaker, is insufficient for a causal nexus." *Kelly v. Warren Cnty. Bd. of Comm'rs*, 396 F. App'x 246, 255 (6th Cir. 2010) (citing *Noble*, 391 F.3d at 723-24).

The same argument holds true with regard to Howlett. Plaintiff argues that there were two lines of animus operating. She, however, fails to establish a causal nexus between Howlett and Peek's ultimate decision to terminate her. While plaintiff complains about how Howlett allegedly conducted the loss prevention investigation and his attitude about her statement, the bottom line fact is that plaintiff admits to the offending conduct. At no time has she ever denied doing the improper merchandise return, even to the point of arguing that she should have been disciplined with probation rather than termination.

Further, there is no showing in the record that Peek had direct contact with Howlett. Neither Peek nor Howlett were deposed. Peek's affidavit reflects that he consulted HR Director Martin and relied on the statement of plaintiff in making his decision. There is no reference to any contact with Howlett. Again, there is no competent evidence to establish a direct discriminatory information flow between Howlett and Peek, so there is no evidence to show that the alleged discriminatory motives of Howlett influenced Peek's decision. *See Noble*, 391 at 723. Without such competent evidence, there is no showing of a causal nexus and no animus can be imputed to Peek. Any contention by plaintiff that it "must have been transmitted" is purely speculative and insufficient to establish a causal nexus. *Kelly*, 396 F. App'x at 255.

17

Plaintiff's main contention, however, seems to be that there was exculpatory information kept from Peek, i.e., that Ferguson gave her permission to do the return as she did. The problem with this logic is that plaintiff has not shown that this is in fact exculpatory information that would have made a difference in the outcome of the decision making process. Peek's affidavit clearly states that company policy prohibits employees from falsifying transactional documents in any way since such action can lead to credit card fraud and create legal problems. The affidavit further demonstrates that no one in defendant's employ has engaged in conduct similar to that engaged in by plaintiff and not been terminated. This evidence has not been questioned. Thus, there is no reason to believe that defendant would have condoned Ferguson's violation of company policy by approving the return in the manner it was performed. Plaintiff's contention that Ferguson's approval of the transaction is exculpatory and would have kept plaintiff from termination is speculative at best. She has not shown how his approval of a transaction done in a manner strictly prohibited by the company would have kept her from being terminated.

The court concludes that plaintiff cannot demonstrate a material issue of fact on the genuineness and motivation behind defendant's legitimate, non-discriminatory reason for her termination and therefore cannot show pretext. Her imputed animus theory fails because she cannot connect the alleged discriminatory flow of information from Howlett and Ferguson to the decision maker Peek. Plaintiff has the ultimate burden of showing that her age was the "but for" cause of her termination, or in other words, that she would not have

18

been terminated "but for her age." Plaintiff has failed to present sufficient evidence to raise

a material issue of fact as to whether Peek's ultimate decision to terminate plaintiff was based

on intentional age discrimination. Accordingly, summary judgment is appropriate in favor

of defendant.

## Hostile Work Environment

Additionally, plaintiff is alleging a hostile work environment based on age. In

order to prove a prima facie case of hostile work environment, a plaintiff must show:

> 1. The employee is 40 years old or older;
> 2. The employee was subjected to harassment, either through words or actions, based on age;
> 3. The harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and
> 4. There exists some basis for liability on the part of the employer.

*Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996). "With respect to the

third element, [the Sixth Circuit has] stated that while a plaintiff must also subjectively feel

that an environment is hostile, '[c]onduct that is not severe or pervasive enough to create an

objectively hostile or abusive work environment - an environment that a reasonable person

would find hostile or abusive,' is beyond the purview of the AEDA (sic)." *Peecook v.*

*Northwestern Nat'l Ins. Group*, No. 96-4318, 1998 WL 476245, at *2 (6th Cir. Aug. 3, 1998)

(quoting *Crawford*, 96 F.3d at 835). A court must look at the totality of the circumstances

19

when applying this standard. "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Crawford*, 96 F.3d at 835 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

In her response to defendant's motion for summary judgment, plaintiff did not respond to defendant's arguments addressing summary judgment on the hostile work environment claim. By failing to respond, plaintiff has abandoned this claim. *Abdulsalaam v. Franklin Cnty. Bd. of Comm'rs,* 637 F. Supp. 2d 561, 578 (S.D. Ohio 2009) ("Plaintiffs do not clearly respond to that argument in their brief and that failure alone warrants summary judgment in Defendants' favor on that issue) (citing *Dage v. Time Warner Cable*, 395 F. Supp. 2d 668, 679 (S. D. Ohio 2005) (plaintiff abandoned claim by failing to address it in his responsive pleading)); *see also Kattar v. Three Rivers Area Hosp. Auth.*, 52 F. Supp. 2d 789, 798 n.7 (W.D. Mich. 1999) ("The Court will treat that claim as abandoned because Kattar did not address it in his brief in response to Defendants' motion for summary judgment."); *Knittel v. First Fin. Mortg. Corp.*, No. 08-44-JBC, 2009 WL 1702174, at *3 (E.D. Ky. June 17, 2009) ("By failing to respond specifically to Citimortgage's arguments on those claims, the plaintiffs have abandoned them, and the court will grant summary judgment to Citimortgage."); *Nat'l Info. & Commc'ns Equip. Network v. Willigan,* No. 06-28-DLB, 2007

WL 2979928, at *10 (E.D. Ky. Oct. 11, 2007) ("By failing to specifically respond to Defendants' arguments on the tortious interference claim, the Court concludes that Plaintiff has abandoned this claim."). Therefore, the court will grant summary judgment to defendant on plaintiff's claim for a hostile work environment.

However, even if plaintiff had not abandoned the claim, she has not demonstrated an objectively hostile and offensive work environment. Plaintiff actually stated in her letter to Peek that she "really enjoyed" her job. *Crawford*, 96 F.3d at 836 (no evidence harassment interfered with work performance and plaintiff claimed she liked her job). Plaintiff also continued to perform her job at a high level by generating over $700,000 in sales per year. While dealing with co-workers who do not always perform their job duties or work as hard as they should is unpleasant and difficult, it does not necessarily constitute a hostile or offensive work environment. "The hallmarks of a hostile work environment are a workplace permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hale v. ABF Freight Sys., Inc.*, No. 1:10-CV-184, 2011 WL 5238672, at *11 (E.D. Tenn. Nov. 1, 2011) (citing *Harris*, 510 U.S. at 21) (internal quotation marks omitted)). Plaintiff has not made this required showing.

**Retaliation**

Plaintiff also alleges a claim of retaliation based upon age. To make a prima facie case of retaliation under the ADEA, a plaintiff must establish that: "(1) he engaged in protected activity when he made his age discrimination complaint; (2) Defendant knew about his exercise of the protected activity; (3) Defendant thereafter took adverse employment action against him; and (4) there was a causal connection between the protected activity and the adverse employment action." *Spengler v. Worthingon Cylinders*, 615 F.3d 481, 491-92 (6th Cir. 2010). Once plaintiff makes that showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If defendant successfully makes this showing, the burden shifts back to the plaintiff to demonstrate that "the proffered reason was not the true reason but merely a pretext for retaliation." *Harris*, 594 F.3d at 485 (citing *Ladd v Grand Trunk W. R.R.* 552 F.3d 495, 502 (6th Cir. 2009)). "The burden of persuasion remains with the plaintiff throughout." *Id*. (citing *Ladd*, 552 F.3d at 502).

Plaintiff contends that she made complaints to the corporate office. She has no documentation to support these transmittals, and defendant has no record of receiving them. The one letter from plaintiff that is in the record was written after her termination and was addressed to Peek. It is undated and has no fax transmittal information on it. The handwritten cover page says, "one package was mailed 2-15-09. Don't think you received. So I'm faxing this one and I hope to hear from you." Peek stated in his affidavit that he did

22

not receive any complaints or correspondence from the plaintiff.

Assuming without deciding, however, that plaintiff has made out a prima facie case of retaliation, the claim fails at the pretext stage for the reasons already discussed at length above related to her age discrimination claim and for those that follow. Again, as already noted, in order to show pretext, plaintiff must present admissible evidence to show that the proffered reason was not the true reason for defendant's employment action. *Barnes,* 366 F. Supp. 2d at 616. This can be done by showing that (1) the employer's reason for termination has no basis in fact, (2) the reason offered for the employee's termination was not the actual reason, or (3) the reason offered was insufficient to warrant the employer's action. *Manzer,* 29 F.3d at 1084.

Plaintiff's termination has a basis in fact as she readily admitted to the conduct that resulted in her termination. She has never denied that she made the return inappropriately using her debit card and signing the original customer's name herself. Plaintiff has not demonstrated or raised and issue of fact as to whether that the conduct was insufficient to warrant dismissal. Peek's affidavit makes clear that no one employed by the company has engaged in a similar type behavior and not been terminated. Additionally, plaintiff has not offered sufficient evidence to raise a material issue of fact concerning the reason for her termination. She has not presented evidence to show that the motivation for her termination was other than her improper return of the necklace in violation of company policy.

Peek's affidavit states that he initiated his investigation based on an anonymous call to the loss prevention line. Plaintiff has not presented admissible proof that links that Ferguson or Howlett. As already discussed, plaintiff has not linked any alleged discriminatory animus to Peek through Ferguson or Howlett. Further, plaintiff does not show how these alleged letters, complaining about the young associates in the store, altered Peek's investigation that was begun from the anonymous call and his ultimate termination decision.[8] Plaintiff has not made cogent arguments or presented sufficient evidence to convince a reasonable trier of fact that the true reason for her termination was retaliation for complaining about age discrimination rather than the improper merchandise return in violation of company policy, conduct which plaintiff admitted doing. Therefore, the court concludes that plaintiff's retaliation claim fails on the basis of pretext, and summary judgment is appropriate.

## Judicial Estoppel

Defendant contends that plaintiff's claims are barred by the doctrine of judicial estoppel because she did not list her employment discrimination claim on her Chapter 13 bankruptcy property schedule and signed a declaration that the bankruptcy schedules were true. Defendant argues that the bankruptcy court adopted plaintiff's position by taking

---

[8] While the alleged letters arguably make a connecting link with Peek in the context of plaintiff's *retaliation* claim, they do not advance the required showing of a causal nexus for imputed animus in her *age discrimination* claim.

24

several actions regarding plaintiff's bankruptcy.

"The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe*, 546 F.3d 752, 757 (6th Cir. 2008) (quoting *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)) (internal quotation marks omitted); *see also New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire,* 532 U.S. at 749-50 (citations omitted). The Sixth Circuit "has stressed that the doctrine of judicial estoppel is utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.'" *Browning*, 283 F.3d at 776 (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

The application of judicial estoppel is not appropriate, however, in cases involving conduct that amounts to mistake or inadvertence. *Browning*, 283 F.3d at 776. In the bankruptcy context, "[t]wo circumstances in which a debtor's failure to disclose might

25

be deemed inadvertent are: (1) 'where the debtor lacks knowledge of the factual basis of the undisclosed claims,' and (2) where 'the debtor has no motive for concealment.'" *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *Browning*, 283 F.3d at 776). The Sixth Circuit in *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894 (6th Cir. 2004), noted that the "absence of bad faith" was also a factor to be considered when determining whether judicial estoppel applies. When determining whether there was an absence of bad faith, the court particularly looks at "attempts" by the plaintiffs to notify the bankruptcy court about their claim. *White*, 617 F.3d at 478. In sum, then, to support a finding of judicial estoppel, the court must find that: (1) "[plaintiffs] assumed a position that was contrary to the one that [they] asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [plaintiffs'] omission did not result from mistake or inadvertence." *White*, 617 F.3d at 478.

Pursuant to the requirements of the Bankruptcy Code, a debtor has an affirmative duty to disclose all assets at the time of filing a bankruptcy petition. 11 U.S.C. § 521. "It is well-settled that a cause of action is an asset that must be scheduled under § 521(1)." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005); *see also Eubanks*, 385 F.3d at 897. "Moreover, '[t]he duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action.'" *Lewis*, 141 F. App'x at 424 (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999)).

26

Plaintiff has provided to the court documentation demonstrating her efforts to notify the bankruptcy court of her pending discrimination claim that her bankruptcy attorney left off her schedule. Plaintiff notified the Chapter 13 Trustee at her creditors' meeting that the claim had not been listed. The record also includes an agreed order reflecting that any proceeds from the debtor's possible discrimination claim are to be paid into the debtor's plan as well as authorization for her attorney in this civil action to represent her. The court concludes that plaintiff made sufficient good faith attempts to notify the bankruptcy court, and therefore application of judicial estoppel to bar her claims is inappropriate in this case.

IV.

*Conclusion*

Accordingly, for the reasons stated herein, defendant's motion for summary judgment will be granted, and this case will be dismissed. An order consistent with this opinion will be entered.

ENTER:

_____ s/ Leon Jordan _____
United States District Judge

27